DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Counsel for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
In re:

36-60 ROUTE 303 ASSOCIATES LLC,    Chapter 11
                  Case No. 16-22645 (RDD)
          Debtor.
-----------------------------------------------------X

## DECLARATION OF MARTIN TENENBAUM
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

  MARTIN TENENBAUM hereby declares, pursuant to 28 U.S.C. §1746 as follows:

  1. I am the managing member and 10% owner of 36-60 Route 303 Associates, LLC (the "Debtor"). I submit this affidavit pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

**Local Rule 1007-2(a)(1)**

  2. The Debtor owns a shopping center located at 36-60 Route 303, Valley Cottage, New York 10989 (the "Property"), consisting of 9 commercial store fronts and a parking lot. The occupied spaces consist of an Indian take-out restaurant, a Mexican restaurant, an American bar/restaurant, a Subway sandwich shop, a tattoo shop, a personal trainer/gym, and two businesses owned by me, a gunsmith shop and a real estate office. There is one vacant space, which was recently vacated by a nail salon at the expiration of its lease.

3.     About twelve years ago I went into business with Joseph Limongelli ("Limongelli"), a longtime acquaintance and neighbor of mine. I invested money into LLCs to fund real estate projects, and Limongelli oversaw the operations. We were supposed to split the profits 50/50. Unbeknownst to me, Limongelli was mismanaging and misappropriating the funds I invested into the LLCs, one of which is the Debtor.

4.     In November 2009, I commenced a lawsuit against Limongelli in Westchester Supreme Court for breach of fiduciary duty, conversion, and fraud, among other claims. In March 2011, after a bench trial, the Court held that Limongelli breached his fiduciary obligations to me and entered a judgment against Limongelli in the amount of $1,695,828 together with a declaration that Limongelli owed $550,000 in outstanding loans to me and the LLCs. In March 2012, an order was entered directing Limongelli to deliver his interests in the LLCs to me, including his shares in the Debtor.

5.     It was a Pyrrhic victory. By that time, most of the LLCs were financially distressed and unable to be revived. On July 3, 2014, I was forced to file an individual chapter 11 Case No. 14-22961 (rdd) in order to restructure my personal guaranty and other obligations related to the absolute mess that Limongelli left behind. I was able to resolve all issues with my secured creditors, and my individual case was dismissed on June 30, 2015.

6.     Unlike most of the LLCs that were completely devastated, the Debtor was able to limp along over the past few years with my direct involvement and oversight. However, the Debtor fell behind in its property tax payments and is alleged to owe approximately $275,000.

7.     I had a plan to sell the shopping center to pay the taxes, but that plan has been undermined by Limongelli's in-law, Salvatore Cappiello ("Cappiello").

8.      The initial purchase of the Property was an insider deal conceived by Limongelli before I discovered his wrongdoing.  On June 16, 2009, Limongelli caused the Debtor to purchase the Property from Amalfi Realty LLC ("Amalfi"), which is owned by Limongelli's in-law, Cappiello.  Limongelli and his in-law retained Canavan & Kaufman to represent both sides of the transaction – Amalfi as seller and the Debtor as purchaser.[1]  Limongelli caused the Debtor to execute a Note in favor of Amalfi in the amount of $2,100,000 at an interest rate of 6.5% with interest only payments in the amount of $11,375 per month, and granted a mortgage.  The Note becomes due and payable on June 16, 2016.

9.      I believe the purchase price agreed between Limongelli and Cappiello was highly inflated.  The Property was 50% vacant at the time.  It also needed $200,000 in capital improvements which I subsequently had to fund in order to keep the Property operating.

10.     The Debtor has never been able to operate at a profit because of the enormous debt service to Cappiello and because of unexpected, substantial rent defaults during the difficult economy.  I continued to struggle to make everything work, and in fact was successful in making all of the interest-only mortgage payments to Cappiello.  Although the Debtor remained current with the mortgage, the Debtor fell behind on property taxes.

11.     In an attempt to address the property tax problem, I began marketing the Property for sale.  I continued to try to work out a solution with Cappiello, but all of my suggestions were rejected.  I couldn't agree to a 20% interest rate as he demanded.

12.     The real estate market was initially soft, but recently improved.  I've received an offer to purchase the Property in the amount of $2,350,000.  Although a healthy offer, it is not enough to pay Cappiello, the real estate taxes, the broker, and closing costs.  At the same time, a

---

[1] In 2012, I sued Canavan & Kaufman alleging they negligently failed to record certain mortgages for various of the LLCs.  Also, after my lawsuit alleged that they helped Limongelli fraudulently transfer

tax lien foreclosure proceeding was commenced by the County of Rockland, with the last date of redemption set on June 16, 2016.

13. In light of the pending tax payment deadline, I retained counsel to present a discounted pay-off proposal to Cappiello in an attempt to close on the sale of the Property before the tax foreclosure. After receiving the Debtor's attorney's initial letter Cappiello retained a White Plains law firm with a very good reputation. The Debtor's attorneys began providing back-up information and documents to Cappiello's counsel for the purpose of furthering discussions. Cappiello's attorneys were very professional and I was hopeful they would be able to guide the matter to a successful conclusion for all involved.

14. Unfortunately, what transpired was a shocking effort by Mr. Cappiello to sabotage the Debtor, which led directly to this chapter 11 filing.

15. First, Cappiello and another man, a "tough guy", came to the Property. Cappiello offered to give me $100,000 cash in exchange for the deed to the Property. I told him I would only consider a transfer of ownership if the payment was by check and handled properly through our attorneys. Despite the strange encounter, Debtor's counsel and Cappiello's counsel agreed to continue to work together to try to reach a resolution with a potential discounted pay-off.

16. On April 20, 2016, at the request of Cappiello's attorneys, the Debtor's attorneys drafted and sent a closing statement estimating the anticipated disbursements that would be made at the closing, provided a discounted pay-off could be reached.

17. On the morning of April 21, 2016, Cappiello's attorneys told the Debtor's attorneys that a response to the draft closing statement would be delayed because Cappiello said he was away for the weekend.

---

assets to his wife. That matter was settled during my personal chapter 11 case for $137,500.

18.     Cappiello apparently lied to his attorneys because later in the day on April 21, 2016, Cappiello visited every tenant at the Property. He told each of them that I was in financial trouble, that I couldn't afford to keep the shopping center, and that I was going to lose the Property. Capiello also told the tenants that they are going to lose their security deposits. Cappiello called himself "the bank". He implied that he would be the new owner and that he intends to open a pizza restaurant at the end of the shopping center (he used to have an Italian restaurant at the shopping center before he sold it to the Debtor). The tenants told me that they took this as a direct threat that Cappiello intends to cause one of the restaurants in the Property to lose its lease.

19.     Mr Cappiello proceeded to question each tenant about how much rent they pay, if they owe rent arrears, and how much their security deposit is. This was taken as a direct threat that eviction proceedings will be starting. One of the tenants indicated to me that Cappiello's questioning of his personal rent situation and overall demeanor made him feel extremely "unsafe and unsteady" about the situation. He said he was worried that Cappiello is unstable, and that if Cappiello becomes the new owner the tenant could lose his lease and business. The tenant also told me that Cappiello was walking around the Property with a list of names and phone numbers for each tenant, which felt like an invasion of privacy and further threatened the tenants. That night, Cappiello called a tenant at his home and made the same statements, asking for his personal information regarding rent arrears and stating that I am in financial trouble and I was going to "*abscond with the tenant security deposits.*"

20.     On April 22, 2016, in response to these unconscionable tactics the Debtor's attorneys wrote a cease and desist letter to Cappiello's attorneys. Soon thereafter, upon

5

information and belief they terminated their representation of Cappiello. Presumably, because they are an honorable firm that would not participate in such behavior.

21. On May 3, 2016, Cappiello called one of the tenants, the tattoo shop, and asked for the cell phone of the owner. He told the employee that I am "*up to no good*" and that I am "*doing shady things*" and that he "*shouldn't pay the rent*".

22. On May 6, 2016, without any notice to me or the Debtor, Cappiello delivered a written Notice to all tenants in the Property stating that the mortgage was in default and directing the tenants to pay rent to Amalfi as of May 16, 2016. Paragraph 13 of the Mortgage states that the Debtor is entitled to collect and receive all rents, but such right may be revoked by Amalfi upon any default, on five days' written notice. <u>No such five day notice of default was ever served upon the Debtor or me</u>. Accordingly, Cappiello's constant harassing of the tenants and attempts to divert the rent payments to himself were not authorized under the terms of the Mortgage and at a minimum constitute a tortious interference with contract.

23. On May 9, 2016, Cappiello came to my shop and confronted one of my employees. My employee asked him why he was telling the tenants not to pay their rent. Mr. Cappiello responded with a long winded diatribe which shockingly included "*you have to think like a Jew*".

24. Cappiello has intentionally and tortuously interfered with the Debtor's relationship with its tenants, with the malicious intent of causing the Debtor to lose the Property in the tax foreclosure sale.

25. I attempted to avoid this chapter 11 filing by using best efforts to work with Cappiello's prior counsel to move forward with the potential purchaser. Instead of working with

6

me in good faith, Cappiello has taken affirmative steps to destroy the Debtor's relationship with its tenants, all while the tax foreclosure sale is looming.

26. As a direct result of Cappiello's actions the Debtor filed this chapter 11 case to consummate the sale of the Property, subject to an auction, while protecting the Debtor's primary asset from a tax foreclosure sale.

**Local Rule 1007-2(a)(2)**

27. This case was not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

**Local Rule 1007-2(a)(3)**

28. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

29. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in §101(31) of the Bankruptcy Code is being filed contemporaneously with this Affidavit.

**Local Rule 1007-2(a)(5)**

30. A list of the names and addresses of the five largest secured creditors is being filed contemporaneously with this Affidavit.

**Local Rule 1007-2(a)(6)**

31. A summary of the Debtors' assets and liabilities is being filed contemporaneously with this Affidavit as part of my Schedules of Assets and Liabilities.

**Local Rule 1007-2(a)(7)**

32.     None of the securities of the debtor are publicly held.

**Local Rule 1007-2(a)(8)**

33.     None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

34.     The Debtor operates its business from 36-60 Route 303, Valley Cottage, New York, a property which the Debtor owns.

**Local Rule 1007-2(a)(10)**

35. The location of the Debtor's substantial assets is 36-60 Route 303, Valley Cottage, New York.

**Local Rule 1007-2(a)(11)**

36. The following actions or proceedings are pending:

(i) *In the Matter of the Foreclosure of Tax Liens by Proceeding In Rem pursuant to Article Eleven of the Real Property Tax Law, County of Rockland*; State of New York, Supreme Court, County of Rockland, Tax Enforcement Notification Index No. 2055/15.

**Local Rule 1007-2(a)(12)**

37. I am the managing member of the Debtor.  I operate the Property, collect rents, hire vendors to maintain the Property, and undertake all responsibilities with respect to the Debtor's operations.  I have been a property manager for numerous properties for over 30 years.

**Local Rule 1007-2(b)(1) and (2)**

38. The Debtor's estimated weekly payroll to employees for the thirty (30) day period following the Chapter 11 petition is zero.

39. The Debtor's estimated weekly payroll and payments to officers, stockholders, and directors for the thirty (30) day period following the Chapter 11 petition is zero.

**Local Rule 1007-2(b)(3)**

40. The Debtor estimates that it will break even in the 30-day period following the filing of the chapter 11 petition. A 30-day budget will be filed separately.

## CONCLUSION

Pursuant to 28 U.S.C. §1746, the undersigned declares under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*/s/ Martin Tenenbaum*

Martin Tenenbaum